*Pena-Barrero v. City of New York*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 7th day of March, two thousand eighteen.

Present:     ROBERT A. KATZMANN,
                         *Chief Judge*,
             PIERRE N. LEVAL,
                         *Circuit Judge,*
             RICHARD M. BERMAN,
                         *District Judge*.[*]

_____

LUIS F. PENA-BARRERO,

                   *Plaintiff-Appellant*,

                   v.                                           No. 17-1286

CITY OF NEW YORK, KEITH KERMAN, STEVE WEIR,
FRANK DAZZO, JOHN DOE, said names being fictitious,
the persons intended being those who aided and abetted the
unlawful conduct of the name defendants,

                   *Defendants-Appellees.*

_____

For Plaintiff-Appellant:          WILLIAM W. COWLES II (Samuel Maduegbuna, *on the brief*),
                                  Maduegbuna Cooper LLP, New York, NY.

---

[*] Judge Richard M. Berman, United States District Court for the Southern District of New York, sitting by designation.

For Defendants-Appellees: JOHN MOORE (Jane L. Gordon, *on the brief*), *for* Zachary Carter, Corporation Counsel of the City of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Caproni, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Luis Pena-Barrero appeals from a final judgment entered by the district court granting summary judgment in favor of the defendants with respect to each of Pena-Barrero's causes of action. *Pena-Barrero v. City of New York*, No. 14 Civ. 9550, 2017 WL 1194477 (S.D.N.Y. Mar. 30, 2017) (Caproni, *J.*). "We review a grant of summary judgment *de novo*," viewing "the facts in the light most favorable to the non-moving party and resolv[ing] all factual ambiguities in its favor." *Coppola v. Bear Stearns & Co., Inc.*, 499 F.3d 144, 148 (2d Cir. 2007). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Coppola*, 499 F.3d at 148 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Pena-Barrero was employed in a variety of positions by the City of New York between 1994 and 2012. At all times relevant to this matter, Pena-Barrero worked as an associate staff analyst within the Department of Citywide Administrative Services ("DCAS"), where he

reported to Defendants-Appellees Steve Weir and Frank Dazzo. Defendant-Appellee Keith Kerman served as a deputy commissioner of DCAS.

Although Pena-Barrero was eligible to take the civil service exam on multiple occasions during his time as an employee of the City, he never did so and therefore remained a "pure provisional" employee. App. 975. Provisional appointments may be made "[w]henever there is no appropriate eligible list" of candidates who have passed the civil service exam "available for filling a vacancy." N.Y. Civ. Serv. Law § 65(1). State law makes clear that "[n]o provisional appointment shall continue for a period in excess of nine months," *id.* at § 65(2), however, and "in no case shall the employment of any such provisional appointee be continued longer than four months following the establishment of [an] eligible list" of candidates for the position, *id.* at § 65(3). In 2008, DCAS implemented a plan to come into substantial compliance with the New York Civil Service Law, according to which it issued a Notice of Examination in 2009 for the position provisionally held by Pena-Barrero, with the examination to take place in February 2010. Pena-Barrero did not apply to take the February 2010 examination, pursuant to which DCAS established a civil service list for his position in March 2012. New York Civil Service Law § 65(3) thus barred Pena-Barrero from continuing in his provisional position beyond July 2012, at the latest.

Although the New York Court of Appeals has made clear that "[p]olicy considerations warrant strict compliance by employers with the time limitations imposed under the Civil Service Law," *City of Long Beach v. Civ. Serv. Emps. Ass'n, Inc.-Long Beach Unit*, 8 N.Y.3d 465, 472 (2008), Pena-Barrero nevertheless remained provisionally employed by DCAS long after the civil service list for his position was established. Eventually, on October 4, 2012, a member of DCAS's Provisional Reduction Analysis Team emailed Monique Knoll, DCAS's

3

head of human resources, instructing that "***all provisionals serving in titles with active eligible lists of over four months must be removed immediately.***" App. 255 (emphases in original). On October 5, 2012, the very next day, Knoll informed Pena-Barrero by letter that his employment was terminated, effective immediately. Pena-Barrero subsequently initiated the instant action, pleading that he was impermissibly discriminated against, retaliated against, and subject to a hostile work environment, in violation of the federal Civil Rights Act and Family and Medical Leave Act ("FMLA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

Pena-Barrero's claims for race, national origin, and disability discrimination suffer from fundamental flaws. Pena-Barrero could not continue his employment as an associate staff analyst in light of his failure to pass the civil service exam. Accordingly, he cannot demonstrate a *prima facie* case of discrimination because he cannot "show . . . that he was qualified for the position he held." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *see also Orlando v. Dep't of Transp.*, 459 F. App'x 8, 9 (2d Cir. 2012) ("Appellee's failure to promote [plaintiff] in 2007 cannot support a *prima facie* discrimination finding because he failed the test that was administered for the promotion that year."); *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010) (defendants "cannot have violated state or local discrimination laws by implementing . . . regulations that determine, here, whether [plaintiff] is eligible to serve").

Even assuming *arguendo* that Pena-Barrero could establish *prima facie* discrimination, his discrimination claims would nevertheless fail because he cannot establish that the defendants' proffered reason for his termination "is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014); *see also Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (applying same standard to NYSHRL & NYCHRL); *Mihalik v. Credit*

4

*Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013) (employer is "entitled to summary judgment" under NYCHRL "if the record establishes as a matter of law that discrimination played no role in its actions" (alterations and internal quotation marks omitted)). The record is clear that Pena-Barrero was terminated by Monique Knoll, who was prompted to take action by DCAS's Provisional Reduction Analysis Team. Regardless of how Kerman, Weir, and Dazzo felt about Pena-Barrero's race, national origin, or disability, there is simply no evidence that they played any role in his termination. *See, e.g.*, *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999) ("We recognize that the impermissible bias of a single individual at any stage of the . . . process may taint the ultimate employment decision . . . so long as the individual shown to have the impermissible bias played a meaningful role in the . . . process.").

Pena-Barrero's theory that the defendants impermissibly retaliated against him for an earlier lawsuit against the City suffers from the same malady.[1] His primary argument on appeal is that he was terminated as a result of having brought his prior action, but there is no basis for finding that the DCAS employees actually involved in Pena-Barrero's termination knew of the litigation or that they were responding to anything other than Pena-Barrero's failure to pass the civil service exam. Pena-Barrero would have us draw "an inference of retaliation based on the close temporal proximity" between the settlement of his first lawsuit and his subsequent termination, Pena-Barrero Br. at 39, but "an inference of retaliation does not arise" where, as here, "timing is the *only* basis for a claim of retaliation." *Slattery v. Swiss Reinsurance Am.*

---

[1] Pena-Barrero's first suit against the City was settled on May 2, 2012. As part of that settlement, Pena-Barrero released "the City . . . and all present and former officials, employees, representatives and agents of the City . . . from any and all claims, liabilities and/or causes of action which [Pena-Barrero] has or may have . . . based on any act, omission, event or occurrence from the beginning of the world up through and including the date [t]hereof . . . ." App. 215. As a result of that settlement, in conjunction with an extended medical leave taken by Pena-Barrero, only those events occurring during the approximately 20 days that Pena-Barrero worked between the settlement and his October 5th termination may provide the basis for Pena-Barrero's claims in this action. Events occurring prior to May 3, 2012, are described solely for narrative purposes and to inform our discussion of conduct occurring thereafter.

*Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (emphasis added). Accordingly, Pena-Barrero cannot show "a causal connection between the protected activity and the adverse employment action," *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001), nor that he was terminated "as a result" of having taken "an action opposing [his] employer's discrimination," *Mihalik*, 715 F.3d at 112.[2]

The same is likewise true of Pena-Barrero's claim that he was retaliated against for taking an extended medical leave in 2012. A plaintiff alleging retaliation under the FMLA "must establish that . . . he was qualified for his position" and that he "suffered an adverse employment action . . . under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). Much of Pena-Barrero's argument once again focuses on his termination as a retaliatory adverse action. As we have repeatedly explained, however, there is no evidence that Pena-Barrero was terminated for any reason other than the fact that he was not qualified to remain employed by DCAS under the New York Civil Service Law. Pena-Barrero's argument that the defendants refused to process his request to qualify for an exception to the New York Civil Service Law, and that his personal belongings had been moved and his access to various electronic databases and functions had been disabled during his leave, fares no better. Assuming *arguendo* that these events rose to the level of adverse actions, there is no evidence establishing that Kerman, Weir or Dazzo were responsible, let alone that they undertook such actions with retaliatory intent.

---

[2] Although Pena-Barrero chiefly focuses on his termination, he also points to a purported "campaign of adverse actions," providing a cursory description of several events that he lists seriatim. Pena-Barrero Br. at 42. We decline to address these events in light of the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (internal quotation marks omitted).

Lastly, although the district court erred in assessing Pena-Barrero's hostile work environment causes of action, the error was harmless. The district court concluded that there was no connection between Pena-Barrero's acrimonious relationship with his colleagues and his membership in a protected class despite racist statements allegedly made by Weir, and disparaging comments that each of the individual defendants made regarding Pena-Barrero's problematic attendance record, which may have served as a proxy for Pena-Barrero's disability. *See McMillan v. City of New York*, 711 F.3d 120, 129 (2d Cir. 2013). Although such comments do not provide direct evidence that the defendants' actions arose from an impermissible discriminatory animus, Pena-Barrero was entitled to rely on them as circumstantial evidence from which a jury might draw inferences as to what motivated the defendants' treatment of him. *See, e.g.*, *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) ("[P]rior derogatory comments by a co-worker may permit an inference that further abusive treatment by the same person was motivated by the same . . . bias manifested in the earlier comments.").

Nevertheless, summary judgment was properly granted in favor of the defendants on these causes of action because Pena-Barrero has failed to adduce evidence that his work environment was sufficiently hostile to be legally cognizable. At bottom, Pena-Barrero's hostile work environment claims rest on three legs: (i) Weir threatened to call security after Pena-Barrero refused to leave Weir's office while Weir was otherwise occupied; (ii) Weir questioned whether Pena-Barrero exaggerated his bi-polar disorder in order to avoid the consequences of his poor performance; and (iii) Kerman accused Pena-Barrero of stealing an office chair.[3] Although

---

[3] Pena-Barrero also makes several assertions in support of his hostile work environment claim that are not supported by the record. We note, by way of example and without reciting each such instance, that Pena-Barrero argues that his request to transfer between DCAS departments was blocked by Kerman while citing a March 2012 email that demonstrates no such thing (and which is not actionable in any event given Pena-Barrero's earlier settlement with the City). Similarly, he claims that the defendants ignored his complaints concerning his work environment while citing an email showing that his concerns were brought to the attention of DCAS's senior leadership. We need not—and do not—credit such unsupported assertions. *See* Fed. R. Civ. P. 56(c)(1)(A).

"there is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim," *Rivera v. Rochester-Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 22 n.5 (2d Cir. 2014) (internal quotation marks and alterations omitted), even taken together these events are fairly characterized as "nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences," *Mihalik*, 715 F.3d at 111 (internal quotation marks omitted). Certainly, they fall short of establishing an environment that "would reasonably be perceived . . . as hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

We have considered all of the plaintiff's arguments on this appeal and find in them no basis for vacatur. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK