20-3901-cv
*Laguerre v. National Grid USA*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of March, two thousand twenty-two.

PRESENT:
> MICHAEL H. PARK,
> BETH ROBINSON,
> > *Circuit Judges*,
> JED S. RAKOFF,
> > *District Judge.*[*]

_____

JANINA LAGUERRE,

> *Plaintiff-Appellant*,

        v.                             No. 20-3901-cv

NATIONAL GRID USA,

> *Defendant-Appellee*.

_____

FOR APPELLANT:                      ARTHUR Z. SCHWARTZ, Advocates for Justice, Chartered Attorneys, New York, NY.

---

[*] Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

FOR APPELLEE: PATRICK M. COLLINS, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gershon, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment appealed from entered on October 23, 2020, is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for proceedings consistent with this order.

Plaintiff-Appellant Janina Laguerre worked as a Customer Service Representative ("CSR") receiving inbound calls for her employer, Defendant-Appellee National Grid USA. Laguerre, who has lupus, alleged that National Grid unlawfully discriminated against her on the basis of her disability when it failed to accommodate her work-from-home request or transfer her to a different position within the company, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); the New York State Human Rights Law, N.Y. Exec. L. § 290, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* ("NYCHRL"). Laguerre appeals the district court's grant of summary judgment in favor of National Grid with respect to Laguerre's ADA claim and its pre-judgment order denying her motion to re-open the summary judgment record for further fact finding regarding National Grid's post-pandemic shift to remote work.[1]

---

[1] The district court dismissed Laguerre's Section 504 claim because Laguerre did not produce evidence that National Grid received federal funding. Laguerre does not challenge the district court's disposition of her Section 504 claim in her appellate briefing except to state in her recitation of facts that "Appellee is a recipient of Federal Funds." Appellant's Br. at 2. Laguerre did not identify any evidence in the summary judgment record regarding National Grid's federal funding that she contends the district court overlooked. Accordingly, any challenge to the dismissal of her Section 504 claim is waived, and we affirm the court's dismissal of that claim. *See Ahlers v. Rabinowitz,* 684 F.3d 53, 66 (2d Cir. 2012) (holding that "[i]ssues not sufficiently argued in the briefs are considered waived").

We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to **AFFIRM** in part, **REVERSE** in part, and **REMAND** the matter to the district court.

We review an order granting a motion for summary judgment de novo, meaning without deference to the district court. *Sotomayor v. City of New York*, 713 F.3d 163, 164 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).[2]

1. Laguerre's ADA Claim

To establish a failure to accommodate claim under the ADA, a plaintiff must demonstrate: (1) the plaintiff is a person with a disability for purposes of the ADA; (2) an employer covered by the statute had notice of the plaintiff's disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such an accommodation. *See, e.g.*, *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013). The parties do not dispute that Laguerre has produced sufficient evidence to establish the first and second elements. Our inquiry concerns the third and fourth prongs—whether Laguerre made a sufficient showing that, with reasonable accommodation, she could perform the essential functions of her position and that National Grid failed to make the appropriate accommodation. *See McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009).

This Court uses "a two-step process to evaluate whether the failure to provide a proposed accommodation constitutes a violation of the ADA." *Jackan v. N.Y. State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000) (discussing allocation of burdens with respect to accommodations in ADA and Rehabilitation Act cases). The plaintiff bears the initial "burdens of both production and persuasion as to the existence of some accommodation"

---

[2] Unless otherwise noted, in quoting caselaw, this Order omits all alterations, citations, footnotes, and internal quotation marks.

that would allow the plaintiff to perform the essential functions of the employment position, "including the existence of a vacant position for which [the plaintiff] is qualified." *McBride*, 583 F.3d at 97. If the plaintiff meets this burden, then the analysis shifts to the second inquiry: whether the proposed accommodation is reasonable. "As to the requirement that an accommodation be reasonable, we have held that the plaintiff bears only a burden of production." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). Once done, the plaintiff "has made out a *prima facie* showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant." *Id.*

Laguerre alleges that National Grid discriminated against her by failing to reasonably accommodate her disability. *See* 42 U.S.C. § 12112(b)(5)(A) (defining "discriminat[ion] against a qualified individual on the basis of disability" under the ADA to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity"). In particular, Laguerre made two distinct accommodation requests: first, to be transferred from her position as a CSR receiving inbound calls[3] to a different, less stressful job at National Grid; and second, to work from home.

Construing the record evidence in the light most favorable to Laguerre, she did not meet her burden of production with respect to her request to transfer to a different position. Laguerre bears the burden to identify the existence, at or around the time when she sought her accommodation, of an existing vacant position to which she could have been reassigned.

---

[3] Laguerre contends that the district court erred in determining that her essential job duties entailed answering inbound customer calls, arguing that individuals with the job title of CSR perform a range of other functions at National Grid. However, she does not dispute that she was part of a discrete group of 155 CSRs employed by National Grid "whose job involves only taking inbound customer calls," App'x at 310, and that she was employed specifically for that purpose. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 99 (2d Cir. 1997) (finding that district court had improperly focused "solely on the *title* held by a person" rather than "on the fundamental job duties of the employment position the individual with a disability [holds or] desires") (emphasis added). The district court correctly concluded Laguerre's "position was as a CSR receiving inbound calls." Special App'x at 12.

4

*See McBride*, 583 F.3d at 97–98; *see also Molina v. City of Rochester*, 764 F. App'x 49, 50–51 (2d Cir. 2019). Mere speculation that such a position existed, or that National Grid could have created such a position, is insufficient. *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."); *see also Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999) ("[A]n employer need not reassign an employee if no position is vacant. Nor is the employer obliged to create a new position to accommodate the employee."). Because Laguerre identifies no position at National Grid that was both "less stressful" and vacant during the relevant period, the district court did not err in awarding National Grid summary judgment with respect to this accommodation request. App'x at 324.

Laguerre's request to work from home is a closer question. Construing the evidence in the light most favorable to Laguerre, we conclude that she satisfied her burden of proposing a reasonable accommodation that would allow her to continue performing the essential functions of her position (taking inbound calls) from home.[4]

In discrimination claims based on an employer's alleged failure to accommodate, the plaintiff bears the initial burdens of both production and persuasion as to the existence of some accommodation that would allow the plaintiff to perform the essential functions of the job. *See McMillan*, 711 F.3d at 126. In clarifying the standard for plaintiffs seeking to prove

---

[4] Neither party contends that Laguerre needed to be physically present to perform the essential duties of her CSR job except insofar as National Grid contends that it lacked the technology to accommodate Laguerre's remote work request. For that reason, this case is distinguishable from those in which physical presence in the workplace was required to perform the "essential functions" of the positions at issue. *See, e.g.*, *McBride*, 583 F.3d at 99 (explaining that pre-disability position and requested accommodation position "required the employee to be physically present in the manufacturing areas of BIC's facility where she would have been exposed to chemical fumes, a condition which would have been incompatible with McBride's disability and presumably . . . could not have been ameliorated"); *see also Frantti v. New York*, 850 F. App'x 17, 20 (2d Cir. 2021) (concluding that the plaintiff "has not raised a genuine issue of material fact with respect to his ability to perform the essential functions of his job even with reasonable accommodations" when position required him to be "in the office and available on a consistent basis, for assignments and to communicate with co-workers and other parties" and his employer "could not technically accommodate remote work").

5

employment discrimination claims under the ADA, we have explained: First, plaintiffs bear the burden of proving they are otherwise qualified; if an accommodation is needed, then plaintiffs must show, as part of their burden of persuasion, that an effective accommodation exists that would render them otherwise qualified. *Borkowski*, 63 F.3d at 139. Second, "[a]s to the requirement that an accommodation be reasonable, we have held that the plaintiff bears only a burden of production." *Id.* at 138. Notably, "[t]his burden . . . is not a heavy one." *Id.* Rather, "[i]t is enough for the plaintiff to suggest the existence of a *plausible* accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* (emphasis added). In other words, the plaintiff need only show that an accommodation "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). In sum, "[t]hese two requirements placed on the plaintiff will permit district courts to grant summary judgments for defendants in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly." *Borkowski*, 63 F.3d at 139.

The record evidence supports Laguerre's position that an effective accommodation (remote work) existed, it was plausible for CSRs to work from home, and the technology to enable a work-from-home arrangement was not, on its face, unobtainable for National Grid.

Specifically, the evidence demonstrates that CSRs at National Grid who perform functions other than receiving inbound customer calls have worked remotely, National Grid has piloted remote work positions in the past, and inbound calls can be routed to other call centers. The president of the union, who worked as a CSR in the call center for 25 years, also stated her belief that it was possible to route calls to other locations, and based on her experience, she did not see why calls could not be routed to a CSR's home:

> In my opinion, and I was a CSR who worked on inbound calls for over 20 years, there is no reason why inbound calls cannot be routed to a [CSR's] home. [National Grid's] system reroutes calls to other Call Centers, sometimes to Syracuse, sometimes to Massachusetts, when there is an overload. The computer system, called CRIS, can be accessed [online]. Rerouted calls can easily be recorded. No confidential information is given during the course of such calls, such as Social Security numbers. At no time

6

> in discussions about Ms. Laguerre has [National Grid] explained
> why it could not allow her to do incoming call work at home.

App'x at 433.

Even if this evidence does not conclusively establish the reasonableness of the accommodation, viewing the evidence in Laguerre's favor, Laguerre met her modest burden of proposing a plausible accommodation, the cost of which, on its face, did not exceed its benefits.

Upon receiving Laguerre's request for accommodation, the burden shifted to National Grid to demonstrate that such accommodation was unreasonable or unduly burdensome. *McMillan*, 711 F.3d at 128 ("If a plaintiff suggests plausible accommodations, the burden of proof shifts to the defendant to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable."). An "undue hardship" is "an action requiring significant difficulty or expense." *Id.* (quoting 42 U.S.C. § 12111(10)(A)). These inquiries are inherently fact specific. *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) ("The reasonableness of an employer's accommodation is a fact-specific question that often must be resolved by a factfinder."); *Wernick v. Fed. Rsrv. Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996) ("Whether or not something constitutes a reasonable accommodation is necessarily fact-specific. Therefore, determinations on this issue must be made on a case-by-case basis."). An employer "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *US Airways, Inc.*, 535 U.S. at 402.

The only evidence that National Grid provided to satisfy this burden is conclusory testimony that Laguerre could not work from home because the company did not possess the requisite technology at the time of her request. But "reasonable accommodation" may include "acquisition or modification of equipment or devices" and "other similar accommodations." 42 U.S.C. § 12111(9)(B). National Grid did *not* state that the technology was unavailable or was unreasonably expensive, and it did not claim even to have investigated the feasibility of procuring such technology in response to Laguerre's request for accommodation. Nor did National Grid provide any evidence regarding the costs of

7

acquiring technology that would enable Laguerre to work at home, much less an analysis to demonstrate that the cost of such an endeavor would exceed its benefits. Under our case law, it is incumbent upon the employer to provide a more robust defense of its position. *See, e.g.*, *Borkowski*, 63 F.3d at 139 ("[W]hile the plaintiff could meet her burden of production by identifying an accommodation that facially achieves a rough proportionality between costs and benefits, an employer seeking to meet its burden of persuasion on reasonable accommodation and undue hardship must undertake a more refined analysis.").

Thus, the reasonableness of Laguerre's accommodation request, and whether it would impose an undue hardship on National Grid, is a material fact in dispute and one best left to the factfinder on remand.[5]

2. Laguerre's Motion to Reopen the Evidence Post-COVID-19

Laguerre contends that the district court abused its discretion by denying her motion to reopen the summary judgment record to permit the trial court to consider National Grid's prompt transition to remote work in response to the COVID-19 pandemic.[6]

We review the district court's ruling under an "abuse of discretion" standard. *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004). "A district court abuses its discretion when (1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous

---

[5] Because we conclude that Laguerre has adduced sufficient evidence to defeat summary judgment and remand for the factfinder to determine whether Laguerre's accommodation request would have posed an undue burden on her employer, we do not address Laguerre's claim that National Grid failed to sufficiently engage in the interactive process in response to her accommodation request, leaving this issue open for further exploration on remand. *See McBride*, 583 F.3d at 99–101.

Additionally, because we reverse the court's dismissal of Laguerre's federal ADA claim, with respect to which the district court has original jurisdiction, we likewise reverse the court's dismissal of Laguerre's supplemental state law claims, permitting Laguerre to reassert these claims on remand. *See* 28 U.S.C. § 1367(a).

[6] We reject National Grid's assertion that this Court lacks jurisdiction to consider the district court's ruling on Laguerre's pre-judgment motion to reopen the summary judgment record because she did not specifically challenge the court's ruling on that motion in her notice of appeal. By challenging the final summary judgment order, Laguerre effectively challenged the interlocutory orders leading up to that decision because they merge with the judgment for purposes of appellate review. *See Yobo v. N.Y. State Facilities Dev. Corp.*, 13 F. App'x 41, 43 (2d Cir. 2001).

8

factual finding—cannot be located within the range of permissible decisions." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).

Here, the district court reasonably concluded that National Grid's post-pandemic actions were not relevant to the reasonableness of the requested accommodation at the time of Laguerre's pre-pandemic accommodation request. Therefore, we conclude that the district court did not abuse its discretion by denying Laguerre's motion to reopen the record.[7]

* * *

For the reasons set forth above, the district court's judgment is **AFFIRMED** regarding the dismissal of Laguerre's Section 504 claim, **REVERSED** regarding the dismissal of Laguerre's ADA, NYSHRL, and NYCHRL claims, and **REMANDED** to the district court for further proceedings consistent with this Order.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

[7] We likewise conclude that the district court acted within its discretion in striking Laguerre's Supplemental Post-Argument Memorandum, which was filed after oral argument on the summary judgment motion and which National Grid moved to strike as a sur-reply. *See, e.g.*, *Gladstone Ford v. N.Y.C. Transit Auth.*, 43 F. App'x 445, 449 (2d Cir. 2002) (holding district court's refusal to allow transit authority employee to supplement his opposition papers with sur-reply, after deadline for filing papers had passed on employer's motion for summary judgment, was not abuse of discretion).