08-0253-ag
Huarcaya v. Mukasey

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: October 29, 2008                    Decided: December 12, 2008)

Docket No.  08-0253-ag

_____

ALEJANDRO LINARES HUARCAYA,

*Petitioner*,

— v .—

MICHAEL B. MUKASEY, ATTORNEY GENERAL ,

*Respondent*.

_____

Before:      WALKER, B.D. PARKER, AND RAGGI, *Circuit Judges*.

_____

Petitioner Alejandro Linares Huarcaya seeks review of the Board of Immigration Appeals's decision upholding the denial of his application for adjustment of status.  Because we find that the BIA's interpretation of 8 C.F.R. § 1245.10(a)(3) is permissible, we affirm the BIA's decision and deny review of the petition.

DENIED.

_____

RAMIRO ALCAZAR,  Meriden, Connecticut.

1

ETHAN B. KANTER, Senior Litigation Counsel (Michael P. Lindemann, Assistant Director, Office of Immigration Litigation, *on the brief*) *for* Gregory G. Katsas, Assistant Attorney General, Civil Division, Department of Justice, Washington, D.C.

_____

PER CURIAM:

Petitioner Alejandro Linares Huarcaya, a native and citizen of Peru, seeks review of a decision of the Board of Immigration Appeals ("BIA") upholding the denial of his application for adjustment of status. *In re Huarcaya*, No. A 79 078 179 (B.I.A. Dec. 17, 2007). We affirm the BIA's decision and deny review of the petition.

## BACKGROUND

In 1994, Congress amended 8 U.S.C. § 1255(i) to allow aliens who entered the United States without inspection and met certain specifications to adjust their status upon the payment of a penalty fee. Initially, to be eligible for adjustment under § 1255(i), aliens were required to prove that they had a visa petition or labor certification filed on their behalf on or before January 14, 1998. In 2000, however, Congress temporarily extended that deadline to April 30, 2001. Pub. L. No. 106-554, 114 Stat. 2763 (codified as amended at 8 U.S.C. § 1255 (2000)).

The United States Department of Justice promulgated regulations to govern who can be "grandfathered" under 8 U.S.C. § 1255(i). *See* 8 C.F.R. § 1245.10. In addition to meeting the deadline, an alien must show that the relevant labor or marriage-visa petition filed on her behalf was "approvable when filed." 8 C.F.R. § 1245.10(a). According to the regulations, "approvable when filed"

2

means that, as of the date of the filing of the qualifying immigrant visa petition under section 204 of the Act or qualifying application for labor certification, the qualifying petition or application was **properly filed, meritorious in fact, and non-frivolous** ("frivolous" being defined herein as patently without substance). This determination will be made based on the circumstances that existed at the time the qualifying petition or application was filed. A visa petition that was properly filed on or before April 30, 2001, and was approvable when filed, but was later withdrawn, denied, or revoked due to circumstances that have arisen after the time of filing, will preserve the alien beneficiary's grandfathered status if the alien is otherwise eligible to file an application for adjustment of status under section 245(i) of the Act.

8 C.F.R. § 1245.10(a)(3) (emphasis added). Therefore, to be eligible for adjustment, an alien must show that the relevant petition was (1) properly filed (2) meritorious in fact and (3) non-frivolous.

Turning to the case at hand, the record reflects that while Huarcaya was living in Peru, he rented an apartment from a family that had a daughter named Ruth. Although Huarcaya fathered several children by two different women in Peru, he testified that he dated Ruth in Peru for approximately eight years. In 1998, Ruth left Peru for the United States and became a legal permanent resident. Huarcaya came to the United States without inspection in 2000, purportedly to join her. They were married on March 31, 2000, and within a month, Ruth filed an I-130 visa petition for Huarcaya.

The marriage was short-lived, and Ruth and Huarcaya were divorced on March 4, 2002. Ruth's I-130 was denied on March 8, 2004. Shortly after his divorce was finalized, Huarcaya married his second wife, Lucy, an American citizen. Lucy also filed an I-130 on his behalf. Unlike Ruth's, Lucy's I-130 was approved, and Huarcaya filed an I-485 to seek adjustment of

status. The United States Citizenship and Immigration Services ("CIS") denied the application. In its denial letter, the CIS explained that at the time of Huarcaya's I-485 interview, the CIS had requested evidence concerning the bona fide nature of Huarcaya's marriage to Ruth and in response, Huarcaya only submitted photos. Further, noting the approximate one-year duration of his marriage to Ruth, the CIS concluded that Huarcaya failed to meet his burden of proving that Ruth's I-130 petition was approvable when filed.

After an immigration hearing in which he sought review of the CIS's determination, and during which Huarcaya and Ruth testified, the Immigration Judge ("IJ") found that Huarcaya had "not met the burden of proof to show that [Ruth's application for Huarcaya] was approvable when filed," and ordered him removed.

Between the time the IJ rendered his decision in April, 2006 and Huarcaya's case was decided by the BIA, the BIA considered the meaning of 8 C.F.R. § 1245.10(a)(3) as a "matter of first impression." *In re Riero,* 24 I. & N. Dec. 267, 268 (B.I.A. Apr. 15, 2007). *Riero* presented a similar fact pattern – an alien divorced his first wife, who had filed a marriage-based petition for him before the cut-off date. The question then became whether his first wife's petition was "approvable when filed" such that Riero could be grandfathered under 8 U.S.C. § 1255(i).

In *Riero*, the BIA found that "in order for a visa petition to be 'approvable when filed' in this context, there must be a showing that the marriage on which it is based was bona fide." *Id.* "It is not enough to show merely that a marriage existed," the BIA elaborated. Rather, "in order to be 'meritorious in fact,' the visa petition must be based on a genuine marriage in which the parties intended to share a life as husband and wife, not a marriage of convenience designed

4

solely to confer an immigration benefit on one of the parties." *Id.* This interpretation "is confirmed by the explanation of the 'approvable when filed' standard in the Federal Register, which provides as an example that a visa petition is not approvable when filed if it 'is fraudulent or if the named beneficiary did not have, at the time of the filing, the appropriate family relationship or employment relationship that would support the issuance of an immigrant visa.'" *Id*. at 268-69. According to the BIA, "[i]n the marriage context, a 'fraudulent' visa petition would include one where the marriage was not entered into in good faith." *Id* at 269. Determining that Riero's first marriage did not meet this standard, the BIA affirmed.

In the case before us, the BIA affirmed the IJ's decision, citing *Riero*.[1] *In re Huarcaya*, No. A 79 078 179 (B.I.A. Dec. 17, 2007). The BIA adopted the IJ's conclusion that "there was no documentary evidence to support [Huarcaya's] claim that his first marriage was bona fide at the time of inception." *Id*. "Although it may be true that the respondent and his former wife had few joint documents or finances because they lived with the ex-wife's mother in the mother's house," the BIA wrote, "the respondent's former wife lacked key information about the respondent, his 6 children left behind in Peru, and the respondent's financial commitment to these children . . . ." *Id*. Further, "there were also inconsistencies between their testimonies including what type of employment the respondent had in Peru, and how old the former wife was when she met the respondent." *Id*. The BIA denied relief and this petition for review followed.

**DISCUSSION**

---

[1]Because the BIA issued an opinion in this case that, in part, tracked the reasoning of the IJ, we review the BIA's decision as it supplements that of the IJ. *See Dong Gao v. BIA*, 482 F.3d 122, 125 (2d Cir. 2007).

On appeal, Huarcaya raises two claims. First, he argues that the BIA's construction of 8 U.S.C. § 1255(i) is not entitled to deference. Second, he argues that the term "meritorious in fact" is unconstitutionally vague.

## I. Administrative Law Claim

Huarcaya's claim under *Chevron* is that 8 C.F.R. § 1245.10(a)(3) is invalid. *See Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Specifically, Huarcaya argues that the BIA's interpretation of the regulation – which requires that the petition be both "meritorious in fact" and "non-frivolous" to be "approvable when filed" – renders "non-frivolous" impermissibly redundant. Under Huarcaya's analysis of the regulation, the only permissible interpretation of "meritorious in fact" and "non-frivolous" is not, as the BIA asserts, that the alien show that the petition was based on a bona fide marriage; rather, he argues that the petition must only establish a prima facie case for eligibility. Only this reading, Huarcaya contends, would give content to both the terms "non-frivolous" and "meritorious in fact," as opposed to rendering the term "non-frivolous" completely superfluous. The government, in response, argues that this argument simply identifies an ambiguity in the terms and does not undermine the reasonableness of the BIA's interpretation of the regulation.

We first must determine whether and what kind of deference applies to Huarcaya's claim. Huarcaya argues that *Chevron* applies. *Chevron* contemplates a two-step inquiry. At step one, we must determine "whether Congress has directly spoken to the precise question at issue" and "unambiguously expressed [its] intent." *Id.* at 842-43. If the statute is silent or ambiguous, we must move to the second step and determine whether the agency's construction is reasonable. *Id.*

6

at 843. If the interpretation is reasonable, we must accept it. *Id.* at 844.

Because the statute does not speak directly to this question, we can proceed to step two. Leaving aside for the moment the particular language of the regulation, the BIA's view articulated in *Riero*, requiring a bona fide marriage, is a permissible interpretation of the requirements of 8 U.S.C. § 1255(i). This interpretation is reasonable in light of the statutory framework Congress constructed. To be admissible to the United States on the basis of marriage to a United States citizen, an applicant must establish that the qualifying marriage was "not entered into for the purpose of procuring an alien's admission as an immigrant." 8 U.S.C. § 1186a(d)(1)(A)(i)(III). In the related context of a marriage-based visa petition, the BIA has required a petitioner to establish a "bona fide marital relationship" and a "valid marriage from its inception." *See Matter of Phillis*, 15 I. & N. Dec. 385, 387 (B.I.A. July 7, 1975); *Matter of Laureano*, 19 I. & N. Dec.1, 1 (B.I.A. Dec. 12, 1983). Requiring the visa petition to be "approvable when filed" and "meritorious in fact" is consistent with these principles.

Although the regulations merit *Chevron* deference, *Chevron* is not necessary to resolve this appeal. In arguing for *Chevron* deference, Huarcaya conflates the issue of whether the agency has legitimately interpreted a *congressional statute* with whether the BIA has legitimately interpreted *its own regulations*. By focusing exclusively on the BIA's reading of "meritorious in fact" and "non-frivolous" in 8 C.F.R. § 1245.10(a)(3), Huarcaya is challenging the BIA's interpretation of its own regulations, not the agency's interpretation of the statute.[2] Therefore,

---

[2]This confusion is illustrated by Huarcaya's statement that "[i]t is inexplicable that the [sic] Congress would specifically require that an application be 'non-frivolous' and 'meritorious in fact' if it thought the terms were equivalent." (Petr.'s Br. 12). Congress, of course, did not

*Auer* deference, and not *Chevron*, applies here. *Auer v. Robbins*, 519 U.S. 452 (1997). As we have stated in the past, "*Chevron* deference is the deference afforded to an agency's interpretation of a statute it is charged with administering. . . . *Auer* deference is the deference we afford to an agency's interpretation of its own regulations." *Edwards v. INS*, 393 F.3d 299, 308 n.11 (2d Cir. 2004) (citation omitted).

*Auer* requires that an "agency's interpretations [of its own regulations] are . . . entitled to deference and are 'controlling unless plainly erroneous or inconsistent with the regulation.'" *Llanos-Fernandez v. Mukasey*, 535 F.3d 79, 82 (2d Cir. 2008) (quoting *Auer*, 519 U.S. at 461). *See also Bah v. Mukasey*, 529 F.3d 99, 110-11 (2d Cir. 2008) ("[W]e give 'substantial deference' to BIA decisions interpreting immigration regulations . . . , unless an interpretation is 'plainly erroneous or inconsistent with the regulation.'") (citations omitted). It is "axiomatic that the [agency's] interpretation need not be the best or most natural one by grammatical or other standards . . . . Rather, the [agency's] view need be only reasonable to warrant deference." *Pauley v. BethEnergy Mines*, *Inc.*, 501 U.S. 680, 702 (1991); *see also Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006) ("We review [the BIA's] interpretations of [its] immigration regulations with 'substantial deference' . . . .").

*Auer* deference, like *Chevron* deference, "is warranted only when the language of the regulation is ambiguous." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). It is clear that "approvable when filed" is ambiguous; we previously said as much in *Butt v. Gonzales*, a case we decided addressing this regulation. 500 F.3d 130, 135 (2d Cir. 2007) ("The meaning of

promulgate these regulations; the Department of Justice did.

8

'approvable when filed' is ambiguous . . . ."). Indeed, "approvable when filed" could have several different meanings, including that the persons were actually married; that the persons submitted materials showing that they were actually married; that the petition facially met each requirement; or that the petition was non-fraudulent. Moreover, given the fact that "meritorious in fact" and "non-frivolous" –  the terms the regulations  use to define "approvable when filed" – are somewhat redundant, we find the regulation to be ambiguous. *See id*. (recognizing potential redundancies in the language "meritorious in fact" and "non-frivolous").

A recognition of the potential for redundancy in the BIA's interpretation does not, on its own, however, render the BIA's interpretation plainly erroneous or inconsistent with the regulation. Under well-settled principles of statutory construction, language should be read to give effect to each of its terms. Although Huarcaya's interpretation may give more content to "non-frivolous," this interpretation still does not entirely reconcile "meritorious in fact" and "non-frivolous," given that "meritorious in fact" on its own still connotes a requirement of legitimacy beyond a prima facie showing. If in this case the agency had promulgated regulations that rendered a statutory term redundant, Huarcaya's argument might carry some weight. Yet we are not here to select what a party contends is the "better" interpretation; we are constrained to accept an agency's interpretation that is not plainly erroneous. As the Supreme Court stated in *Auer*, "[t]here is . . . no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment." *Auer*, 519 U.S. at 462.

Further, it is unclear whether the statutory principle not to render a term redundant even applies to deference to an agency regulation. In *Auer*, the petitioners argued that the Secretary of

9

Labor's interpretation of its regulation "contravenes the rule that FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakably within their terms and spirit." *Auer,* 519 U.S. at 462 (internal quotation marks and alteration omitted). The Court rejected the application of this rule to the Secretary. Justice Scalia wrote that the rule is one "governing judicial interpretation of statutes and regulations, not a limitation on the Secretary's power to resolve ambiguities in his own regulations." *Id*. at 462. The Court concluded that "[a] rule requiring the Secretary to construe his own regulations narrowly would make little sense, since he is free to write the regulations as broadly as he wishes, subject only to the limits imposed by the statute." *Id*. at 462-63. A similar argument could be made regarding the BIA's interpretation of its regulations.

At any rate, the BIA's interpretation is particularly reasonable given that we have allowed the BIA to interpret its regulations in light of a statute, even when the plain language of a regulation might suggest different interpretations. In *Joaquin-Porras v. Gonzales*, 435 F.3d 172 (2d Cir. 2006), for example, we reviewed a claim that an immigration judge's decision contradicted the plain language of the applicable regulation, to which we ascribed deference. Although we noted that the "plain-language argument seems plausible," we concluded that "read in the context of other immigration statutes and decisions, the IJ's conclusion when applying the statute was reasonable, despite the fact that he seemed to disregard the words of the applicable regulation." *Id*. at 179. *See also Singh v. Mukasey*, 536 F.3d 149, 154 (2d Cir. 2008) ("We have recognized the BIA's authority to construe regulations in light of statutes, even when their plain text seems to conflict. In this case, too, the BIA has permissibly construed the regulation so as to

10

harmonize it with the statute. The BIA did not violate our mandate in doing so." (citation omitted)). The BIA's interpretation is consistent with Congress's intent to require aliens petitioning for adjustment under marriage-based visas to prove that their marriages are legitimate, and consequently merits deference.

For all these reasons, we conclude that the BIA's interpretation of "meritorious in fact" in *Riero* – and the case at hand – is permissible. As the First Circuit explained in adopting the same interpretation, albeit before the BIA's pronouncement in *Riero*, requiring a showing of a bona fide marriage is consistent with the "history of the statute's grandfather clause" which was "aimed to protect those who had *legitimate* visa applications on file before the more restrictive amendment came into force," rather than giving applicants a "second bite at the apple." *Echevarria v. Keisler*, 505 F.3d 16, 19-20 (1st Cir. 2007) (emphasis added).

## II. Void for Vagueness Claim

Huarcaya also claims that both the statute and the regulation violate due process because they are "void for vagueness" as applied to him, arguing that the phrase "meritorious in fact" is undefined and does not appear to have any well-known meaning. Huarcaya's ability to maintain a void-for-vagueness challenge to a civil regulation that provides immigration benefits is not clear. *See generally Arriaga v. Mukasey*, 521 F.3d 219, 222-23 (2d Cir. 2008) ("The 'void for vagueness' doctrine is chiefly applied to criminal legislation. Laws with civil consequences receive less exacting vagueness scrutiny."). We need not resolve that issue, nor need we address the government's claim that Huarcaya does not have a due process interest in adjustment of status,

11

because Huarcaya has failed to establish that the provision is vague as applied to him.

"When the challenge is vagueness 'as applied,' there is a two-part test: a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." *United States v. Nadi*, 996 F.2d 548, 549 (2d Cir. 1993) (internal quotation marks and alterations omitted); *see also Farrell v. Burke*, 449 F.3d 470, 486 (2d Cir. 2006). Although "meritorious in fact" is not a specifically defined term, Huarcaya did not lack notice as to what was required. The CIS told Huarcaya that he needed to submit more documentation to supplement his first wife's I-130, and that pictures alone were not enough. Moreover, Huarcaya knew already from the application his second wife successfully submitted and copiously documented for her I-130 petition what he needed to show to prove his marriage. As for the second prong, we agree with the government that marriage-based visa eligibility has always meant that a petitioner had to demonstrate that his marriage was bona fide. Given the guidance supplied by *Riero* and immigration judges' familiarity with determining the validity of marriage-based petitions, no real threat of arbitrary enforcement is presented. We therefore find that the regulation is not void for vagueness.

## CONCLUSION

For the foregoing reasons, we deny review.