**UNITED STATES of America,**
**Appellee,**

v.

**Mustafa Kamel MUSTAFA, also known as Mustapha Kamel, also known as Mostafa Kamel Mostafa, Aswat Haroon Rashid, also known as Haroon, also known as Haroon Aswat, and Earnest James Ujaama, also known as James Ujaama, also known as Bilal Ahmed, also known as James Earnest Thompson, also known as Abu Sumaya, also known as Abdul Qaadir, Defendants,**

**Oussama Kassir, also known as Abu Abdullah, also known as Abu Khadija, Defendant–Appellant.**

No. 09–3974–cr.

United States Court of Appeals,
Second Circuit.

Jan. 19, 2011.

Mark S. DeMarco, Bronx, NY, for Appellant.

Justin Anderson, Michael Levy, Assistant United States Attorneys, for Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

PRESENT: DENNIS JACOBS, Chief Judge, RICHARD C. WESLEY, DENNY CHIN, Circuit Judges.

### SUMMARY ORDER

Oussama Kassir appeals from his conviction, after a jury trial, of (1) providing and concealing material support and resources to terrorists, 18 U.S.C. §§ 371, 2339A, 2339B, 2; (2) conspiring to provide and conceal material support and resources to terrorists, 18 U.S.C. §§ 371, 2339A, 2339B, 2; (3) conspiring to kill, kidnap, maim, and injure persons in a foreign country, 18 U.S.C. § 956; and (4) distributing information relating to explosives, destructive devices, and weapons of mass destruction, 18 U.S.C. §§ 842, 2. Kassir was sentenced principally to life imprisonment.

Kassir challenges his conviction on four grounds. First, Kassir argues that the district court erred in admitting evidence he maintains was irrelevant and unfairly prejudicial. Second, Kassir contends that the district court abused its discretion by allowing a terrorism expert to testify regarding the history, structure and leadership of al Qaeda, the recruitment of terrorists, and the means by which terrorist organizations raise money, distribute propaganda, and provide training. Third, Kassir asserts that evidence introduced at trial was insufficient to establish that he had a knowing agreement with another person in connection with the conspiracy counts of his conviction and that the support he provided to terrorist organizations was material. Fourth, Kassir argues that, as applied to him, 18 U.S.C. § 2339B is unconstitutionally vague, overly broad, and infringes his First Amendment rights. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

■ [1] We see no abuse of discretion in the district court's challenged evidentia-ry rulings. *See United States v. Qui-nones,* 511 F.3d 289, 307 (2d Cir.2007). Evidence was admitted under Federal Rule of Evidence 404(b) that Kassir associated with terrorist groups other than al Qaeda, attended and attempted to attend jihad training camps in other countries, and admitted to killing people while engaged in jihad. That evidence was highly probative of Kassir's state of mind, including his "intent and knowledge," which were disputed at trial. *See United States v. Teague,* 93 F.3d 81, 84 (2d Cir.1996). With respect to Kassir's claim that the evidence was unduly prejudicial, the district court "conscientiously balanced the proffered evidence's probative value with the risk for prejudice" and its conclusion that that the evidence was admissible was not "arbitrary or irrational." *United States v. Al–Moayad,* 545 F.3d 139, 159–60 (2d Cir.2008); *see also United States v. Abu–Jihaad,* 630 F.3d 102, 133–34 (2d Cir. 2010).

■ [2] The admission of testimony by a terrorism expert was not an abuse of discretion. *See United States v. Cruz,* 363 F.3d 187, 192 (2d Cir.2004). As the district judge observed, this Court "repeatedly has approved the admission of expert testimony in organized crime cases to help explain the operation, structure, membership, and terminology of organized crime families." *United States v. Kassir,* 04 Cr. 356(JFK), 2009 WL 910767, at *4 (S.D.N.Y. Apr. 2, 2009) (internal quotation marks omitted). Expert testimony is similarly appropriate in the context of a case—such as this one—which implicates the activities of terrorist organizations and their supporters. The district court reasoned:

Although al Qaeda has become a household name, it remains true that some depictions of it on television, in the movies, and perhaps even in the national

news may be misleading. Furthermore, many of al Qaeda's operational methods relevant to the charges in this case may not be known to the layperson. *Id.* at *5. In light of our deferential standard of review, *United States v. Wexler,* 522 F.3d 194, 204 (2d Cir.2008), and the "liberal standard for the admissibility of expert testimony" under the Federal Rules of Evidence, *United States v. Dukagjini,* 326 F.3d 45, 52 (2d Cir.2003), the ruling that the expert testimony was sufficiently helpful and reliable to be admissible under Rule 702, *Kassir,* 2009 WL 910767, at *7, should not be disturbed.

■ Given "our exceedingly deferential standard of review" of sufficiency, *United States v. Hassan,* 578 F.3d 108, 126 (2d Cir.2008), we conclude sufficient evidence supports Kassir's conviction in all respects.

As to the conspiracy to provide jihadi training, the testimony of Kassir's coconspirator—who testified as a cooperating witness—was sufficient to allow a rational trier of fact to conclude that the government established Kassir's knowing participation beyond a reasonable doubt. *See In re Terrorist Bombings of U.S. Embassies in E. Africa,* 552 F.3d 93, 112 (2d Cir. 2008). "A conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Gordon,* 987 F.2d 902, 906 (2d Cir.1993). "Any lack of corroboration goes to the weight of the evidence, not to its sufficiency, and a challenge to the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal." *Id.*

■ As to the conspiracy to create and maintain terrorist websites, Kassir argues there was insufficient evidence that he had coconspirators. Not so. The government introduced evidence that Kassir's websites were updated while Kassir, incarcerated, lacked access to the Internet, and that authors of documents posted to the websites expressed their gratitude for Kassir's assistance.

■ Sufficient evidence supports the jury's finding that Kassir's support of terrorists and terrorist groups was "material" within the meaning of 18 U.S.C. §§ 2339A & B. Material support or resources is defined as:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b)(1). "[T]he term 'training' means instruction or teaching designed to impart a specific skill, as opposed to general knowledge." *Id.* § 2339A(b)(2). "[T]he term 'expert advice or assistance' means advice or assistance derived from scientific, technical or other specialized knowledge." *Id.* § 2339A(b)(3).

Witnesses testified that Kassir provided training in how to conduct violent jihad; that Kassir represented to them that he intended to train people in "[w]arfare, shooting and tracking," Trial Tr. 930; that Kassir was in possession of money to fund the jihad activities, Trial Tr. 1037; and that Kassir provided training in how to modify an AK–47 to operate as a propelled grenade launcher, how to make a silencer, how to protect Islamic leaders from being shot, and how to slit throats, Trial Tr.

1568, 1046–49, 1211. The government also introduced evidence that websites Kassir maintained hosted terrorist training manuals that were unavailable from other sources. Trial Tr. 848, 1991–95. Based on this evidence, a "rational factfinder could have found the crimes charged proved beyond a reasonable doubt." *United States v. Gaskin*, 364 F.3d 438, 459–60 (2d Cir. 2004).

■ "The void-for-vagueness doctrine derives from the constitutional guarantee of due process." *Mannix v. Phillips*, 619 F.3d 187, 197 (2d Cir.2010). "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, — U.S. —, —, 130 S.Ct. 2705, 2718, 177 L.Ed.2d 355 (2010) (internal quotation marks omitted). When a statute allegedly "interferes with the right of free speech or of association," we apply "a more stringent" test. *Id.* at 2719 (internal quotation marks omitted). However, "perfect clarity and precise guidance have never been required." *Id.* (internal quotation marks omitted).

■ In light of the Supreme Court's decision in *Holder v. Humanitarian Law Project*, we reject Kassir's constitutional challenges to 18 U.S.C. § 2339B. Just as with the as—applied challenge in *Humanitarian Law Project*, Kassir's challenge fails because § 2339B applies clearly to his conduct. 130 S.Ct. at 2720; *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). As the district court observed, knowingly providing jihad training and disseminating training manuals on the Internet for the benefit of al Qaeda, and other terrorist organizations, "implicates the core meaning of a statute that proscribes knowingly providing training and expert advice or assistance to a foreign terrorist organization." *Kassir*, 2009 WL 2913651, at *9 (internal quotation marks omitted).

A "person of ordinary intelligence," *Linares Huarcaya v. Mukasey*, 550 F.3d 224, 231 (2d Cir.2008) (per curiam), would know that training aspiring jihadists in the use of guns and knives, and in how to make poison, Trial Tr. 934–37, 1332–34, 1046–48, is proscribed by 18 U.S.C. § 2339B. A person of ordinary intelligence would also know that creating and maintaining websites that host training manuals and propaganda for jihadist organizations and provide instructions for making explosive devices and other weapons, is similarly prohibited. Trial Tr. 781–82, 2029, 1722–24, 1924–25, 1964–65, 1972–73, 2003–05. Moreover, § 2339B "provides explicit standards for those who apply it," *Linares Huarcaya*, 550 F.3d at 231, because it provides definitions of its relevant terms.

Having reviewed all of the arguments presented on appeal by Kassir, we hereby **AFFIRM** the judgment of the district court.