20-456 (L)
*Bey v. City of New York*

# United States Court of Appeals
# For the Second Circuit

August Term 2020

Argued:  October 21, 2020
Decided:  June 9, 2021

Nos. 20-456 (L), 20-650 (con)

SALIK BEY, TERREL JOSEPH, STEVEN
SEYMOUR, CLYDE PHILLIPS,

*Plaintiffs-Appellees-Cross-Appellants*,

*v.*

CITY OF NEW YORK, FIRE COMMISSIONER
DANIEL A. NIGRO, NEW YORK CITY FIRE
DEPARTMENT, JOHN AND JANE DOE 1–10,
KAREN HURWITZ, SHENECIA BEECHER,

*Defendants-Appellants-Cross-Appellees*.

Appeal from the United States District Court
for the Eastern District of New York
No. 18-cv-4655, Jack B. Weinstein, *Judge*.

Before:     RAGGI, SULLIVAN, AND BIANCO, *Circuit Judges*.

Plaintiffs are four Black firefighters who suffer from a skin condition that causes pain and sometimes scarring when they shave their facial hair. They allege that the FDNY discriminated against them in violation of the ADA, Title VII, and various other laws because the FDNY refused to offer them a medical accommodation to the department's grooming policy, which requires firefighters to be clean shaven in the areas where an oxygen mask or "respirator" seals against their skin. The FDNY premised its refusal on a binding OSHA safety regulation, which prohibits facial hair from "com[ing] between the sealing surface of the [mask] and the [wearer's] face" to ensure that the respirator achieves a proper seal. 29 C.F.R. § 1910.134(g)(1)(i)(A). The United States District Court for the Eastern District of New York (Weinstein, *J.*) granted summary judgment in favor of the plaintiffs on their ADA claim, reasoning that OSHA has interpreted its regulation to permit medical accommodations and that the record clearly indicates that the proposed accommodation is reasonable and will not present an undue hardship on the FDNY. The district court granted summary judgment to the FDNY on all other issues, including the plaintiffs' Title VII claim.

On the parties' cross-appeals, we reverse the district court's decision on the plaintiffs' ADA claim, holding that the OSHA regulation unambiguously prohibits the plaintiffs' proposed accommodation and that a binding federal regulation presents a complete defense to an ADA failure-to-accommodate claim. For the same reasons, we also affirm the district court's grant of summary judgment in favor of the FDNY on the plaintiffs' Title VII claim.

AFFIRMED IN PART AND REVERSED IN PART.

NICOLAS Y. RILEY, Institute for Constitutional Advocacy & Protection, Georgetown University Law Center, Washington, DC; Aymen Aboushi, Tahanie Aboushi, Aboushi Law Firm, New York, NY, *for Plaintiffs-Appellees-Cross-Appellants*.

D. ALAN ROSINUS, JR. (Richard Dearing, Devin Slack, *on the brief*), Assistant Corporation Counsels, *for* James E. Johnson, Corporation

2

Counsel of the City of New York, New York, NY, *for Defendants-Appellants-Cross-Appellees*.

RICHARD J. SULLIVAN, *Circuit Judge*:

This case presents the question of whether employers are required to offer a medical accommodation to their employees under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., even if the requested accommodation is expressly prohibited by binding federal safety regulations. We conclude that they are not, and that such an accommodation is by definition not a reasonable one.

## I.  Background

Plaintiffs Salik Bey, Terrel Joseph, Steven Seymour, and Clyde Phillips (collectively, the "Firefighters") are Black men who were or still are firefighters with the New York City Fire Department (the "FDNY"). Each of them suffers from a skin condition called Pseudofolliculitis Barbae or "PFB," which results in persistent irritation and pain following shaving. The effects of shaving with PFB can range from mild or moderate (such as skin irritation, bruising, and boils) to severe (such as facial scarring). While there are some treatments that help limit

3

PFB's effects, it is medically recommended that individuals with PFB avoid shaving down to the skin. PFB affects between 45% and 85% of Black men.

For most jobs, the inability to be clean shaven would not present a fundamental problem. But that's not the case for firefighters. When fighting fires, particularly fires in urban areas, firefighters can be exposed to smoke and other toxic fumes – conditions that safety regulations refer to as "IDLH atmospheres."[1] To protect themselves against those toxic atmospheres, firefighters are required to wear a respirator also known as a self-contained breathing apparatus or "SCBA."

Under New York law, the FDNY must comply with regulations created by the United States Occupational Safety and Health Administration ("OSHA"). *See* N.Y. Labor Law § 27-a(4)(a). Those regulations cover topics such as what respirators to use, how to test respirator effectiveness, and how respirators should be worn. *See generally* 29 C.F.R. § 1910.134. Of particular importance here are regulations concerning respirator fit and seal; if a respirator does not seal snuggly against the mask-wearer's face, there is a risk that it will not be able to keep out IDLH atmospheres. To ensure proper sealing, the regulations direct that "[f]acial

---

[1] "IDLH" stands for "Immediately Dangerous to Life or Health" and describes atmospheres that "pose[] an immediate threat to life, would cause irreversible adverse health effects, or would impair an individual's ability to escape from a dangerous atmosphere." 29 C.F.R. § 1910.134(b).

4

hair [cannot] come[] between the sealing surface of the [respirator's] facepiece and the face." *See id.* § 1910.134(g)(1)(i)(A). Consistent with that mandate, the FDNY has a written grooming policy that governs how full-duty firefighters may wear their facial hair. In its current form, the policy requires all full-duty firefighters to be clean shaven in the neck, chin, and cheek area, and permits only short sideburns and a closely trimmed mustache that does not extend beyond the mouth's corners or below the lower lip. While the policy currently has no exceptions, it has not always been so strict.

Back in August 2015, the FDNY began to offer medical accommodations to firefighters with PFB. Those accommodations permitted the firefighters to maintain closely cropped beards (one millimeter to one quarter inch in length), uncut by a razor. To ensure that this accommodation did not interfere with respirator performance, the FDNY required firefighters seeking to take advantage of the exception to pass a "fit test" – a standardized test designed by OSHA to ensure that an SCBA properly seals against the mask-wearer's face. Only when a firefighter with facial hair was able to pass such a test without any air leakage did the FDNY permit him to return to full duty. During the time this accommodation system was in place, twenty firefighters, including the plaintiffs, took advantage

5

of the program without any adverse safety incidents.[2]

But following a review in May 2018, the FDNY determined that the accommodation was prohibited by OSHA's regulation and revoked the program. As a result, all firefighters who had previously been granted an accommodation were told that either they had to become clean shaven or they would be placed on light duty.[3] Eventually, each of the Firefighters chose to remain on full duty and shaved.

Later that year, the Firefighters filed this action in the United States District Court for the Eastern District of New York (Weinstein, *J.*) against the City of New York, the FDNY, and various FDNY officials (collectively, "FDNY"), seeking both injunctive relief and damages under the ADA, Title VII, the United States Constitution, and various state and city laws for alleged discrimination. Specifically, the Firefighters argued that by revoking the medical accommodation previously offered to individuals suffering from PFB, the FDNY discriminated against them in violation of the ADA. In addition, because PFB affects Black men more than men of other races, and because only men are required to shave to meet

---

[2] The twenty firefighters included four firefighters who were offered the same accommodation because of religious objections to the department's grooming policy.

[3] Firefighters on light duty do not fight fires, though they keep the same title, salary, and benefits that they had on full duty.

the requirements of the FDNY's facial hair policy, the Firefighters asserted that the FDNY's grooming policy resulted in both disparate treatment and disparate impact in violation of Title VII.

In August 2019, following discovery, the parties cross-moved for summary judgment. The district court granted summary judgment in favor of the Firefighters on their ADA claim, but ruled in favor of the FDNY on all other claims. *See generally Bey v. City of New York*, 437 F. Supp. 3d 222 (E.D.N.Y. 2020). As to the ADA claim, the district court determined that the FDNY's interpretation of the relevant OSHA regulations was unduly restrictive in light of a May 2016 OSHA guidance letter, and it concluded that the regulations actually permitted the medical accommodation the Firefighters sought. *See id.* at 235. Because the FDNY supplied no other basis on which to deny the accommodation, and given that the FDNY had previously offered the accommodation for two-and-a-half years without incident, the district court held that the FDNY was required to resume the accommodation program and entered an injunction to that effect. *Id.* Notably, the district court was silent on whether damages were also warranted. *Id.* at 235, 239.

On the Firefighters' Title VII claims, however, the district court granted summary judgment in favor of the FDNY. As to the disparate treatment claim, the

district court found that the Firefighters failed to "produce[] evidence showing that they were similarly situated to . . . unidentified Caucasian firefighters" who were allegedly permitted to wear beards. *Id.* at 237. The district court also dismissed the Firefighters' disparate impact claim, reasoning that the Firefighters' theory that the FDNY had purposefully discriminated against them was, "at bottom[,] [a] claim[] for disparate treatment only." *Id.* at 238 (citations omitted).

Finally, the district court granted summary judgment to the FDNY on the Firefighters' various constitutional claims because the Firefighters "did not develop an argument on these claims." *Id.* at 239. As to the Firefighters' state- and city-law claims, however, the district court explained that it was dismissing them "without prejudice for possible pursuit elsewhere." *Id.*

The FDNY timely appealed from the district court's decision to grant an injunction on the ADA claim. The Firefighters cross-appealed the district court's summary judgment ruling on their Title VII disparate impact claim (though not their disparate treatment claim). In addition, the Firefighters requested that their state-law claims be reinstated in the event that any of their federal claims are remanded for trial.

8

## II. Appellate Jurisdiction

Although the parties agree that we have jurisdiction over the issues raised on appeal, they dispute why that is. According to the FDNY, the district court's order was a final decision, meaning that we have jurisdiction under 28 U.S.C. § 1291. The Firefighters disagree, asserting that the district court's decision was non-final because it did not address the issue of damages on their ADA claim. Nevertheless, the Firefighters argue that we have jurisdiction over the appeal because both claims before us require injunctive relief and decisions about such relief are fit for appeal on an interlocutory basis. *See* 28 U.S.C. § 1292(a)(1).

We agree with the FDNY that the district court's decision was "final" within the meaning of § 1291. Generally, a final decision is one "that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210 (2d Cir. 2005) (internal quotation marks omitted). When assessing whether a particular decision meets that criteria, we eschew formalism in favor of a pragmatic approach. *See Fiataruolo v. United States*, 8 F.3d 930, 937 (2d Cir. 1993). We instead look to whether, following the district court's decision, further proceedings are contemplated or required. *See Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink &*

9

*Brewery Workers Union Local 812, Int'l Brotherhood of Teamsters*, 242 F.3d 52, 55–56 (2d Cir. 2001); *United States v. Interlink Sys., Inc.*, 984 F.2d 79, 82 (2d Cir. 1993). Here, that comes down to whether the Firefighters' request for damages on their ADA claim is still outstanding. We conclude that it is not.

To start, the district court styled its decision as a "Memorandum, Order, *Judgment*, and Stay." *Bey*, 437 F. Supp. 3d at 226 (emphasis added). Though not dispositive of the matter, the district court's use of the term *judgment* suggests to us that it did not anticipate additional proceedings and that it intended for its ruling to resolve all pending merits issues. Moreover, the district court did in fact resolve all the Firefighters' claims in its decision. *See id.* at 239; *see also Fiataruolo*, 8 F.3d at 937 ("The judgments on their face demonstrate that the court had fully adjudicated all the issues before it, leaving nothing remaining for it to do with respect to this litigation."). And while it is true that the decision does not mention damages, context clearly indicates that the district court intended for that silence to act as a rejection of the Firefighters' requested relief.

During the pre-motion conference, the district court expressed the view that, even if liability were to be established, damages "seem so minimal as to almost be frivolous in this case." J. App'x at 3088; *see also id.* ("I don't see any damages[,] but

10

you can brief it."). So while the district court's decision stayed mum on the issue of damages, the court's silence is most naturally understood as a denial. After all, it would be quite strange for the district court to have intended to silently convey that additional proceedings were needed on relief that it had, up until that point, referred to as "almost . . . frivolous." *Id.*[4]

We therefore conclude that the district court's decision resolved both the issues of liability and damages and left nothing further for the district court to do. Accordingly, we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

### III.    Standard of Review

We review *de novo* a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 168–69 (2d Cir. 2006). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[4] The Firefighters did not seek nominal damages in their Amended Complaint, *see* J. App'x at 37–38, and they do not make any argument regarding nominal damages on appeal.

11

These procedures continue to hold true when we consider cross-motions for summary judgment. In such a case, we "assess each motion on its own merits and . . . view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).

## IV. Discussion

## A. The Firefighters' ADA Claim

At the heart of this appeal is a question about the interplay between federal safety regulations and the ADA's requirement that employers must offer reasonable accommodations to employees with disabilities. The Firefighters have identified what they believe to be a reasonable accommodation to the FDNY's grooming policy – that they be permitted to maintain a minimal amount of facial hair in the neck, chin, and cheek area. The Firefighters have attempted to demonstrate the safety and cost effectiveness of that accommodation through the introduction of expert reports and other evidence. The FDNY has responded primarily by arguing that this accommodation is expressly prohibited by OSHA safety regulations, which are binding on the FDNY via state law.

12

To assess these competing positions, we first provide an overview of the ADA's accommodation framework. Next, we consider the relevant OSHA safety regulations to determine whether they permit the Firefighters' chosen accommodation. Concluding that they do not, we proceed to explain why that fact is fatal to the Firefighters' ADA claim. Lastly, we address an alternative accommodation raised by the Firefighters for the first time on appeal.

## 1. The ADA's Reasonable Accommodation Framework

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Naturally, this forbids all sorts of acts of discrimination, such as adversely classifying employees, terminating employees, or utilizing biased hiring criteria. *See generally id.* § 12112(b). But the statutory regime does not stop there.

Although framed in proscriptive terms, the ADA also requires employers to take certain affirmative steps to assist employees with disabilities. This includes requiring employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual" unless the employer "can demonstrate that the accommodation would impose an undue hardship on

13

the operation of [its] business." *Id.* § 12112(b)(5)(A); *see also Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). That is, the ADA directs employers to make reasonable changes to their facilities, work schedules, training procedures, and the like to accommodate individuals who, "with or without [such] accommodations, can perform the essential functions of the employment position" in question. 42 U.S.C. § 12111(8)–(9); *see also McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96–97 (2d Cir. 2009).

Like many other discrimination claims, ADA claims are subject to the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case. *See McBride*, 583 F.3d at 96. When the alleged discrimination is an employer's failure to offer a reasonable accommodation, the plaintiff must present evidence establishing the following four elements:

> (1) [The plaintiff] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the plaintiff] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Noll*, 787 F.3d at 94 (internal quotation marks omitted). When making a claim based on a failure to accommodate, "the plaintiff bears the burdens of both

14

production and persuasion as to the existence of some accommodation that would allow him to perform the essential functions of his employment." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (internal quotation marks and alterations omitted); *see also McBride*, 583 F.3d at 97. Once a plaintiff "suggests plausible accommodations, the burden of proof shifts to the defendant to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable." *McMillan*, 583 F.3d at 128. *See also Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 76 (2d Cir. 2016); *McElwee v. Cnty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012).

## 2. OSHA's Respiratory-Protection Standard

To accommodate their PFB, the Firefighters requested that they be permitted to grow a minimal amount of facial hair, somewhere in the neighborhood of one millimeter to one quarter inch in length, on their neck, chin, and cheeks. The FDNY rejected that proposed accommodation, not because of implementation difficulties or costs, but because the FDNY says the accommodation is expressly prohibited by OSHA's "respiratory protection standard," 29 C.F.R. § 1910.134, a federal regulation governing safe respirator

15

usage that is binding on the FDNY under New York state law.[5] The respiratory-protection standard makes clear that individuals cannot use a tight-fitting respirator (such as an SCBA) if they have facial hair where the respirator seals against the mask-wearer's face:

> The employer shall not permit respirators with tight-fitting face pieces to be worn by employees who have:
>
> (A)    Facial hair that comes between the sealing surface of the facepiece and the face or that interferes with valve function; or
>
> (B)    Any condition that interferes with the face-to-facepiece seal or valve function.

29 C.F.R. § 1910.134(g)(1)(i).  The Firefighters do not dispute the applicability of this regulation to the FDNY; rather, they say that the term "facial hair" is ambiguous and should be interpreted not to cover the sort of modest length of hair at issue here.  We disagree.

The thrust of the Firefighters' argument is that the regulation draws a distinction between facial hair of different lengths.  But such language qualifying

[5] New York Labor Law Section 27-a(4)(a) directs the New York State Department of Labor Commissioner to "by rule adopt all safety and health standards promulgated under the United States Occupational Safety and Health Act of 1970 (Public Law, 91-596) which are in effect on the effective date of this section."  *Id.* (footnote omitted).  The Commissioner has promulgated a rule adopting the OSHA regulation at issue in this case.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 800.3.

16

the term "facial hair" is nowhere to be found. Adopting the Firefighters' position, then, would require us to read into the regulation text that does not otherwise exist.

Indeed, the distinction the regulation draws is based not on hair length, but on hair location. That is, the regulation differentiates between hair depending on whether it is located "between the sealing surface of the facepiece and the face." *Id.* § 1910.134(g)(1)(i)(A). And by the regulation's plain terms, no facial hair, whatever its length, is permitted to grow in that area. In other words, firefighters must be clean shaven where a respirator seals against the skin.

This reading is reinforced by an appendix to the regulation, which imposes an identical proscription on facial hair when testing respirator fit. *See id.* § 1910.134, App. A, Pt. I.A.9 (stating that a fit test "shall not be conducted if there is *any* hair growth between the skin and the facepiece sealing surface" (emphasis added)). Not only must a firefighter pass a fit test to ensure that the mask functions as intended, but additional fit tests must be conducted whenever there are "changes in [a firefighter's] physical condition that could affect respirator fit." *Id.* § 1910.134(f)(3). If, as the fit-test protocols state, any amount of facial hair in the sealing area can affect respirator fit, then it is only logical that the respiratory-

17

protection standard imposes an identical clean-shave requirement on everyday use.

Accordingly, the respiratory-protection standard clearly requires firefighters to be clean shaven where an SCBA seals against their face. Because we find the regulation to be unambiguous, we can end our analysis there. *See Aleuitan Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 232 (2d Cir. 2020) ("[C]ourt[s] should apply *Auer* deference only after having exhausted all of the 'traditional tools of construction' to determine that a rule or regulation is 'genuinely ambiguous.'" (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019)).

But even if that were not the case, and we had a need to consider OSHA's guidance on the subject, that guidance only further supports our reading of the regulation.[6] Specifically, in an April 2011 interpretive letter, OSHA stated that "when a respirator must be worn to protect employees from airborne contaminants, it has to fit correctly, and this will require the wearer's face to be *clean-shaven where the respirator seals against it*." J. App'x at 94 (emphasis added);

---

[6] Under *Auer v. Robbins*, 519 U.S. 452 (1997), an agency's guidance concerning ambiguities in its own regulations is "entitled to deference and [is] controlling unless plainly erroneous or inconsistent with the regulation" in question. *See Linares Huarcaya v. Mukasey*, 550 F.3d 224, 229 (2d Cir. 2008) (internal quotation marks omitted).

*see also id.* (noting that "even modest facial hair growth can have a significant adverse impact on the protection of" a respirator).

In reaching a contrary conclusion, the district court instead focused on a May 2016 interpretive letter in which OSHA explained that:

> Facial hair is allowed as long as it does not protrude under the respirator seal, or extend far enough to interfere with the device's valve function. Short mustaches, sideburns, and small goatees that are neatly trimmed so that no hair compromises the seal of the respirator usually do not present a hazard and, therefore, do not violate paragraph 1910.134(g)(1)(i).

J. App'x at 169. Both the district court and the Firefighters appear to interpret the word "protrude" as limiting the facial hair ban to only facial hair beyond a certain length (though, it should be noted, they do not identify what that length is). But there are a few problems with that reading.

Most obvious is the fact that the May 2016 letter expressly incorporates by reference OSHA's prior April 2011 letter, which brings with it the direction that mask-wearers must be clean shaven at the respirator's sealing points. Even on its own terms, however, the May 2016 letter does not suggest that short beards are permitted. Specifically, the letter provides examples of permissible facial hair – short mustaches, sideburns, and small, neatly trimmed goatees – each of which

19

ends before a respirator's sealing points. Had OSHA meant to indicate that a beard would be permissible so long as it is short, its choice of examples would make little sense. *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 402 (2d Cir. 2008) (construing general statutory language to "embrace only objects similar to those enumerated" in the provision (internal quotation marks omitted)).

Consequently, even if we agreed with the Firefighters that the respiratory-protection standard is ambiguous (and we do not), OSHA's guidance clearly indicates that firefighters must be clean shaven where a tight-fitting respirator meets the skin.

### 3. Interaction Between the ADA and Binding Federal Regulations

Having concluded that the Firefighters' proposed accommodation is prohibited by binding OSHA regulation, we must decide what to make of that fact. As the Firefighters see it, the regulation is not a sufficient reason for the FDNY to deny them the accommodation they seek. That is so, they say, not only because the FDNY previously provided this accommodation for years without incident, but also because the Firefighters introduced several expert reports suggesting that a short beard is unlikely to affect respirator performance. The Firefighters' position is that, in light of the empirical and expert evidence that they have

20

brought to bear, the FDNY must defend the wisdom of OSHA's regulation on the merits. Again, we disagree.

An accommodation is not reasonable within the meaning of the ADA if it is specifically prohibited by a binding safety regulation promulgated by a federal agency. Whether that is because the illegality of the accommodation presents an "undue hardship" as the FDNY suggests, or because the existence of the federal regulation is itself an affirmative defense, makes little difference. *See* 29 C.F.R. § 1630.15(e) (explaining that it is a defense to liability under the ADA "that another [f]ederal law or regulation prohibits an action (including the provision of a particular reasonable accommodation) that would otherwise be required by this part"); *McNelis v. Penn. Power & Light Co.*, 867 F.3d 411, 416 n.2 (3d Cir. 2017) (reasoning that a refusal to treat compliance with federal law as a defense to an ADA claim would force an employer "to pick between ADA liability on the one hand and administrative penalties on the other"). In either case, an employer cannot be held liable for failing to offer an accommodation that is expressly prohibited by binding federal law.

The Supreme Court's decision in *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999), is instructive on this point. In *Albertson's*, a commercial truck driver was

fired by a national grocery chain after it was discovered that he did not meet a legally required vision standard promulgated by the Department of Transportation. *Id.* at 559–60. The driver sought to be reinstated after he was able to secure a waiver from that standard under a separate federal program, but his employer refused. *Id.* at 560. The Supreme Court nonetheless held that the employer's refusal to accept the government's own waiver program did not violate the ADA, reasoning that the employer "was not insisting upon a job qualification merely of its own devising, subject to possible questions about genuine appropriateness and justifiable application to an individual for whom some accommodation may be reasonable." *Id.* at 570. The Court went on to explain that the employer was not required to shoulder the burden of justifying the generally applicable regulatory standard. *See id.* at 577. Otherwise, "[t]he employer would be required on a case-by-case basis to reinvent the [g]overnment's own wheel." *Id.*

Although *Albertson's* concerned whether the plaintiff was qualified for the job in question, not whether a particular accommodation was reasonable, *see id.* at 567, its analysis still provides useful guidance on several of the issues before us.

22

First, it makes clear that an employer should not be required to defend its adherence to a binding federal safety regulation, even when that regulation conflicts with the goals of the ADA. In fact, the Supreme Court's analysis applies with even more force in this case, since in *Albertson's* the question was whether the employer had to defend its refusal to accept a government waiver program in favor of strict adherence to a generally applicable regulation – that is, the employer did not have to defend the regulation even though the government itself had suggested that the regulation might be unnecessarily restrictive. Here, OSHA has not indicated that SCBAs can be used safely with facial hair in the sealing area (indeed, just the opposite); it is only the Firefighters' experts that have made that claim.

Second, in *Albertson's*, the plaintiff had an exemplary driving record while he was employed under the incorrect assumption that he satisfied the required vision standard. *See Kirkingburg v. Albertson's, Inc.*, 143 F.3d 1228, 1230 (9th Cir. 1998), as amended (July 1, 1998), *rev'd*, 527 U.S. 555 (1999). But those years without incident did not change the Supreme Court's view that his employer could insist on strict adherence to the government's safety regulation. So too here. The fact that no adverse safety events were reported during the period when the FDNY

23

permitted the Firefighters to avoid shaving does not now preclude the FDNY from enforcing the respiratory-protection standard as written.

Nor does the fact that the FDNY previously permitted the Firefighters to maintain short beards. The regulation at issue is of OSHA's devising, not the FDNY's. So the FDNY's prior interpretation and implementation of the regulation is not deserving of any particular deference. *Cf. Bldg. Trades Emps.' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507 (2d Cir. 2002) ("[F]ederal courts owe no deference to state agency's interpretation of federal law that they are not charged with enforcing.").

At bottom, OSHA's regulations are binding on the FDNY and prohibit the accommodation that the Firefighters seek.[7] That ends the matter. Of course, the Firefighters retain the ability to present their evidence to OSHA if they continue to believe that the respiratory-protection standard is unduly restrictive; but it is

---

[7] The Firefighters identify several cases involving similar disputes between firefighters and fire departments that they see as supporting an alternative outcome. But those cases are distinguishable as they either stated that OSHA regulations were not binding on the defendant fire department, *see Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, *J.*, concurring); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1121 (11th Cir. 1993), or failed to mention OSHA regulations altogether, *see generally Kennedy v. District of Columbia*, 654 A.2d 847 (D.C. 1994).

24

OSHA to which such a challenge should be directed, not the FDNY, and not the courts.

### 4. Alternative Accommodation

On appeal, the Firefighters argue that the FDNY's grooming policy is more restrictive than what is required by OSHA's respiratory-protection standard. Specifically, they point out that while OSHA's regulation would permit them to maintain a short goatee, that is prohibited under the FDNY's policy. And because the FDNY based its refusal to grant the proposed accommodation on that regulation, the Firefighters assert that they should, at the very least, be exempted from the aspects of the grooming policy not supported by OSHA's safety rules.[8]

While it is understandable why the Firefighters believe that they are entitled to this alternative accommodation given the state of the record, they did not raise this issue until their reply brief on appeal. We do not ordinarily entertain arguments raised for the first time on appeal, *see Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 50 (2d Cir. 2015), let alone those made only in a reply

---

[8] In their brief, the Firefighters raised this point only in the context of their Title VII claim. But during oral argument, this was presented as a potential alternative accommodation under the ADA. Regardless of how the issue is framed, our analysis remains the same.

brief, *see JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). We see no reason to deviate from that typical practice here.

The Firefighters assert that this argument was implicitly raised below because the ability to grow a goatee is a lesser-included accommodation to the broader accommodation that they actually sought – the ability to grow a full beard. The problem with that position, however, is that it ignores how the FDNY's defensive strategy was likely influenced by the Firefighters' approach. Because the Firefighters requested only an accommodation that was prohibited by binding federal regulation, the FDNY had no reason to defend the difference between its grooming policy and that regulation. Had the Firefighters pursued a more limited accommodation, it's possible (even likely) that the FDNY would have taken a different approach and offered other explanations for those specific aspects of the grooming policy. And since it is the Firefighters' burden to identify the proposed accommodation they are seeking, *McMillan*, 711 F.3d at 126, we conclude that it would be inappropriate to make the FDNY defend against other possible accommodations that the Firefighters could have sought but chose not to.

Accordingly, we conclude that this argument has been waived and we do not consider it on appeal.

**B.      The Firefighters' Title VII Claims**

The Firefighters' Title VII disparate impact claim mirrors their ADA claim and meets a similar fate.  Like ADA claims, disparate impact claims are subject to a shifting evidentiary framework that places the initial burden on the plaintiff to demonstrate a *prima facie* case.  *See Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020).  If that *prima facie* showing is made, the defendant can defend the challenged policy "as job related for the position in question and consistent with business necessity."  *Id.* at 208 (internal quotation marks omitted).

Here, the Firefighters have undoubtedly put forward a *prima facie* case.  They have (i) identified an employment practice (the FDNY's grooming policy), (ii) demonstrated that a disparity exists (PFB is significantly more prevalent among Black men than among any other demographic group), and (iii) established a causal connection between the two (PFB prevents a disproportionate number of Black men from safely satisfying the grooming policy, which can result in their reassignment or termination from the FDNY).  *See id.* at 207 (explaining the elements of a *prima facie* disparate impact claim).  The trouble for the Firefighters

is that the FDNY has conclusively rebutted that case by showing that complying with the respiratory-protection standard is a business necessity.[9]

Just as in the ADA context, we conclude that Title VII cannot be used to require employers to depart from binding federal regulations. Indeed, the reasoning behind *Albertson's* – that employers should not be required to "reinvent the [g]overnment's own wheel," 527 U.S. at 577 – is no less applicable here.

Nor can we agree with the Firefighters that the FDNY's failure to consistently enforce the respiratory-protection standard means that complying with the regulation is not a business necessity. In effect, the Firefighters argue that because the FDNY flouted binding safety standards in the past, we must order it to continue doing so in the future. We cannot endorse such a view. Indeed, while the Firefighters' argument may have some purchase in cases concerning an employer's failure to abide by its *own* regulations, the same cannot be said where the regulation was devised by an independent federal agency and is legally

---

[9] Because the FDNY is required to comply with the regulation as written, no less restrictive alternative exists. *See Mandala*, 975 F.3d at 208 (explaining that a plaintiff can rebut a business necessity defense only if he "show[s] that other methods exist to further the defendant's legitimate business interest without a similarly undesirable racial effect" (internal quotation marks omitted)).

28

binding on the employer.[10]  So, regardless of whether the FDNY has consistently enforced the respiratory-protection standard, complying with that legally binding federal regulation is, by definition, a business necessity and presents a complete defense to the Firefighters' disparate impact claim.[11]

## V.    Conclusion

For the foregoing reasons, we **AFFIRM IN PART** and **REVERSE IN PART** the judgment of the district court.

---

[10] Each of the cases the Firefighters identify is distinguishable on this basis.  *See Conroy v. N.Y. Dep't of Corr. Servs.*, 333 F.3d 88, 91–92, 102 (2d Cir. 2003) (department's sick-leave policy); *Adair v. City of Muskogee*, 823 F.3d 1297, 1301–02, 1308–09 (10th Cir. 2016) (department's "no lifting restrictions" policy, which the department unofficially applied in addition to qualifications called for by the state's administrative code); *Wright v. Ill. Dep't of Children & Fam. Servs.*, 798 F.3d 513, 524 (7th Cir. 2015) (agency's health-evaluation policy).

[11] Because there are no federal claims remaining, we decline the Firefighters' request to reinstate their state-law claims.  *See Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *see also* 28 U.S.C. § 1367(c)(3).